The declaration in this action of ejectment had many counts. Among others, there were counts on the several demises of John and Thomas Carson and William Moore, laid in 1796. At the return term, spring of 1848, the defendant, upon affidavit that the said John, Thomas and William were dead, and had died as far back as 1810, obtained a rule to show cause why the counts, upon their demises, should not be struck out of the declaration. The plaintiff alleged that the other lessors claimed under the said John, Thomas and William. Upon argument, the rule was made absolute, and the plaintiff appealed.
There was no error in making the rule absolute. Indeed, the counsel for the real parties admits that the idea of laying a demise in the name of one who had died many years before the institution of the suit was an "experiment." The experiment ought not to have succeeded. It was obviously an attempt to pervert a fiction of law from its true purpose and intent. The proper time for making the motion was at the appearance term, but the court should, at any time (at least before verdict), have allowed the application, and should have permitted the plea and consent rule to be withdrawn, if necessary, to enable the defendant to make the motion.
The action of ejectment is admirably adapted to try questions of title to land, and the fiction of "lease, entry and ouster" is a beautiful illustration of the fact that a fiction of law "works wrong to no one," and is never introduced into legal proceedings except for the purpose of avoiding useless delay and expense and furthering the ends of justice. It is true "John Doe and Richard Roe" are very much abused by persons who are not well acquainted with them, but they are deservedly favorites with those who have cultivated their acquaintance. No one who *Page 241 
comprehends the full scope and object of the fiction can fail to be struck with it as an enduring monument of the wisdom and clear-sightedness of the fathers of our law.
After it became common for freeholders, instead of bringingreal actions, to enter upon the land and make leases for years, so that the lessees might bring ejectment, it occurred to the courts that the fact of making the "entry and lease" was unnecessary, and was attended with useless expense and delay. How was this to be avoided? If the lease and entry were supposed, and the action was brought against the tenant in (351) possession, he had a right to enter his plea, and could not be called on to make any admissions. The expedient adopted was to bring the action against the casual ejector; let him give notice to the tenant in possession, who, when he applied to be made defendant, might be required to admit "lease, entry and ouster" as a condition of his being allowed to defend. He had no right to complain — he was not required to admit anything that would prejudice his right, but simply to admit those things to have been done which the lessor might easily have done by increasing the trouble and expense. But to require him to admit a thing which could not have been done at the institution of the action — for instance, that a lease had been made by adead man — would be unreasonable. The proposition would have shocked Chief Justice Rolle, who, nearly two centuries ago, had the honor of inventing the action of ejectment in its present form. 3 Bl. Com., 199, 207.
Besides being unreasonable, as requiring the admission of an impossibility, it would be a palpable violation of a fundamental principle of the action of ejectment. "The lessor must not only have title at the date of the demise, but must have title and a right of entry at the commencement of the suit." At the death of the proposed lessors the title passed out of them to their heirs or some one else. When this action was instituted the dead lessors had neither title nor right of entry.
The decision of the court below must be affirmed.